**KAPLAN FOX & KILSHEIMER LLP**
Laurence D. King (CA State Bar No. 206423)
Matthew B. George (CA State Bar No. 239322)
350 Sansome Street, Suite 400
San Francisco, CA 94104
Telephone: 415-772-4700
Facsimile: 415-772-4707
Email: *lking@kaplanfox.com*
         *mgeorge@kaplanfox.com*

**MEYER WILSON CO., LPA**
Matthew R. Wilson  (CA State Bar No. 290473)
Michael J. Boyle, Jr.  (CA State Bar No. 258560)
1320 Dublin Road, Suite 100
Columbus, OH  43215
Telephone: 614-224-6000
Facsimile:  614-224-6066
Email: *mwilson@meyerwilson.com*
         *mboyle@meyerwilson.com*

*Counsel for Plaintiff and the Proposed Class*

*(Additional Counsel on Signature Page)*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| PAOLA NOGUERA, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FIVE STARS LOYALTY, INC.,<br><br>Defendant. | Case No.  18-cv-06468<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff, Paola Noguera (hereinafter referred to as "Plaintiff"), individually and on behalf of all others similarly situated, alleges on personal knowledge, investigation of her counsel, and on information and belief, as follows.

## I. NATURE OF THE ACTION

1. This case involves a scheme by Five Stars Loyalty, Inc., ("Five Stars") (by and through its employees and/or agents) to market its services through the use of automated text messages in plain violation of the Telephone Consumer Protection Act, 47 U.S.C. §§ 227 *et seq.* (hereinafter referred to as the "TCPA").

2. As described more fully below, Five Stars has made substantial sales of products and services derived through illegal telemarketing texts that it, its employees, and/or its agents sent out on its behalf.

3. Five Stars violated the TCPA by contacting Plaintiff and Class Members on their cellular telephones for non-emergency purposes via an "automatic telephone dialing system" as defined by 47 U.S.C. § 227(a)(1), without their prior express written consent within the meaning of the TCPA. Accordingly, Plaintiff brings this putative class action for monetary damages and injunctive relief.

## II. JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005 ("hereinafter referred to as CAFA") codified as 28 U.S.C. § 1332(d)(2). The matter in controversy exceeds $5,000,000, in the aggregate, exclusive of interest and costs, as each member of the proposed Class of hundreds or thousands is entitled to up to $1,500.00 in statutory damages for each call that has violated the TCPA. Further, Plaintiff alleges a national class, which will result in at least one Class member from a different state.

5. This Court also has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 47 U.S.C. §§ 227 *et seq.*

6. The Court has personal jurisdiction over Five Stars because its principal place of business is San Francisco, California, and it is thus is a resident of California for purposes of jurisdiction.

7. Venue is proper in the Northern District of California, pursuant to 28 U.S.C. § 1391, because Five Stars is headquartered in this District, is subject to personal jurisdiction

here, and regularly conducts business here, and because a substantial part of the events or omissions giving rise to the claims asserted herein occurred and continue to occur in that District.

### III. INTRADISTRICT ASSIGNMENT

8. Pursuant to Local Rule 3-2, assignment to the San Francisco or Oakland Divisions is appropriate because the Defendant is headquartered in San Francisco, and the acts and/or omissions that give rise to Plaintiff's claims emanated from San Francisco.

### IV. THE PARTIES

9. Plaintiff Paola Noguera is, and at all times mentioned herein was, an individual citizen of the State of Florida, who resides in Miami, Florida.

10. Five Stars is a Delaware limited liability company whose principal office is located at 340 Bryant St #300, San Francisco, CA 94107. Defendant directs, markets, and provides its business activities throughout the United States.

### V. THE TELEPHONE CONSUMER PROTECTION ACT OF 1991 (TCPA), 47 U.S.C. § 227

#### A. The TCPA And Its Purpose

11. In 1991, Congress enacted the TCPA[1] in response to a growing number of consumer complaints regarding certain telemarketing practices.

12. The TCPA regulates, among other things, the use of automated telephone equipment, or "autodialers." Included within the definition of "calls" made using an autodialer are automated text messages sent in bulk using an automated process.[2] In other words, a text is a call for purposes of the TCPA.

13. Specifically, the plain language of section 227(b)(1)(A)(iii) prohibits the use of autodialers to make any call to a wireless number in the absence of an emergency or the prior express written consent of the called party.

---

[1] Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, 105 Stat. 2394 (1991), codified at 47 U.S.C. § 227 (TCPA). The TCPA amended Title II of the Communications Act of 1934, 47 U.S.C. §§ 201 *et seq.*

[2] *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Report and Order*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003) ("2003 FCC Declaratory Ruling").

14. According to findings by the FCC, the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

15. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.[3]

### B.     The Limited Prior Express Written Consent Exception

16. The FCC has defined prior express written consent in 47 C.F.R. § 64.1200(f)(8) as:

> … an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered."

17. Under the TCPA, the burden is on the seller—here, Five Stars—to have obtained and documented prior express written consent before calls were made.

### C.     Liability For Telemarketing Calls Under The TCPA

18. The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *See* FCC Declaratory Ruling, Memorandum and Order, 10 FCC Rcd. 12391, 12397 (¶ 13) (1995).

19. On May 9, 2013, the FCC released a Declaratory Ruling holding that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of . . . section 227(b) . . . that are committed by third-party telemarketers."[4]

---

[3] *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).

[4] *In the Matter of The Joint Petition Filed by DISH Network, LLC, the United States of America, and the States of California, Illinois, North Carolina, and Ohio for Declaratory Ruling Concerning the Telephone Consumer Protection Act (TCPA) Rules, et al.*, CG Docket No. 11-50, 28 F.C.C.R. 6574, 6574 (¶ 1) (May 9, 2013) ("May 2013 FCC Ruling").

20.     More specifically, the May 2013 FCC Ruling held that, even in the absence of evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls.  28 F.C.C.R. at 6586 (¶ 34).

21.     The FCC has rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal agency and immediate direction and control over the third-party who placed the telemarketing call.  *Id.* at n.107.

22.     The May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information."  *Id.* at 6592-93 (¶ 46).

**D.    Autodialers Under The TCPA**

23.     The TCPA defines an "automatic telephone dialing system" as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." § 227(a)(1)(A)-(B).

24.     Recently, the Ninth Circuit clarified the law in the Circuit on the meaning of an automatic telephone dialing system.[5]  After concluding that the statutory text is ambiguous,[6] the Court held that "the statutory definition of ATDS is not limited to devices with the capacity to call numbers produced by a 'random or sequential number generator,' but also includes devices with the capacity to dial stored numbers automatically."[7]

25.     The Court similarly rejected the idea that "a device cannot qualify as an ATDS unless it is fully automatic, meaning that it must operate without any human intervention whatsoever."[8]  Rather, because, "[c]ommon sense indicates that human intervention of some sort is required before an autodialer can begin making calls, whether turning on the machine or initiating its functions," the so-called "human intervention test" does not determine whether a system constitutes an ATDS.[9]

---

[5] *Marks v. Crunch San Diego, LLC,* ___ F.3d ___, 2018 WL 4495553 (9th Cir. Sept. 20, 2018).
[6] *Id.* at *8.
[7] *Id.* at *9.
[8] *Id.*
[9] *Id.*

**E.  Facts Related To Plaintiff**

26.  Plaintiff is, and at all times mentioned herein, was, a "person," as defined by 47 U.S.C. § 153(39).

27.  On August 14, 2018, at or about 7 p.m. EDT, Plaintiff received two text messages on her cell phone. The first text message stated:

> We've added Johnny B's – Boca Raton to your Fivestars acct .
> Download our app to complete your profile:

28.  The second text message was a hyperlink to the Defendant's website, where the defendant promotes its services.

29.  Defendant's text messages constitutes telemarketing because they promote Defendant's goods and services.

30.  Prior to receiving the text messages, Plaintiff had no contact with Five Stars. At no point did Plaintiff provide prior express written consent, or any other kind of consent, to receive telemarketing messages from Five Stars (or from Johnny B's).

31.  Therefore, Five Stars and its employees and/or agents engage in a consistent pattern and practice of sending text messages to potential customers for the purpose of marketing its services via robo-texting services. These messages are sent without first obtaining, or even attempting to obtain, the prior express written consent that is required under the TCPA.

**F.  Respondeat Superior**

32.  Five Stars is, and at all times mentioned herein was, a "person," as defined by 47 U.S.C. § 153(39).

33.  Five Stars is liable for the statutory violations and torts of its employees who act within the scope of their employment. *Mary M. v. City of Los Angeles*, 54 Cal.3d 202, 209, 285 Cal.Rptr. 99, 814 P.2d 1341 (Cal. 1991). "[T]he employer's liability extends beyond his actual or possible control of the employee to include risks inherent in or created by the enterprise." *Perez v. Van Groningen & Sons, Inc.*, 41 Cal.3d 962, 968, 227 Cal.Rptr. 106, 719 P.2d 676 (Cal. 1986).

34. Five Stars retains employees/agents for the purpose of soliciting and facilitating the marketing of services to individuals and businesses. As such, telemarketing efforts such as the one that resulted in the illegal robotexts to Plaintiff, are squarely within the scope of the agent's/employee's employment by Five Stars.

35. Five Stars' employees/agents retained third-party texting services to send telemarketing messages to Plaintiff and other class members using an "automatic telephone dialing system," as defined by 47 U.S.C. § 227(a)(1), to contact potential new customers on their cellular telephones.

36. The telephone number that the third-party texting services, acting on behalf of Five Stars, called to contact Plaintiff made by an "automatic telephone dialing system," was assigned to a cellular telephone service as specified in 47 U.S.C. § 227(b)(1)(A)(iii).

37. Plaintiff did not provide her "prior express written consent" allowing Five Stars or its employees or agents to send text messages to Plaintiff's cellular phone using an "automatic telephone dialing system," within the meaning of 47 U.S.C. § 227(b)(1)(A). Plaintiff has never even visited Five Stars website or downloaded its mobile application ("app").

38. Five Stars and its employees/agents did not send text messages to Plaintiff's cellular phone "for emergency purposes" as described in 47 U.S.C. § 227(b)(1)(A).

39. The text message sent to Plaintiff's cellular phone placed by an "automatic telephone dialing system" for non-emergency purposes and in the absence of Plaintiff's prior express written consent, violated 47 U.S.C. § 227(b)(1)(A). Specifically, the equipment used by and/or on behalf of Five Stars had the capacity to store, produce, and/or dial telephone numbers from a list or other pre-stored source.

40. As the employer of Five Stars' agents acting within the scope of their authority as employees, Five Stars is responsible for its agents' violations of the TCPA as set forth above.

41. Under the TCPA, the burden is on Five Stars to demonstrate that Plaintiff and Class members provided their prior express written consent within the meaning of the statute.[10]

---

[10] *See FCC Declaratory Ruling*, 23 F.C.C.R. at 565 (¶ 10).

42.     Five Stars and its employees/agents acted willfully, knowingly, and without regard to the TCPA when it initiated the calls described herein.

### G.     Apparent Authority

43.     In the alternative, if Five Stars' agents are determined to be independent contractors rather than employees, then, upon information and belief, Five Stars oversees and controls its agents' actions generally, but particularly with respect to telemarketing.

44.     The text message clearly and unambiguously stated that the services offered would be provided by Five Stars.  Thus, upon information and belief, the agent had authority to use the Five Stars' "trade name, trademark and service mark[s]," as discussed in the May 2013 FCC Ruling.  As such, the agent is an apparent agent of Five Stars.

45.     By hiring and endorsing the hiring of third party texting services to send text messages, Five Stars "manifest[ed] assent to another person . . . that the agent shall act on the principal's behalf and subject to the principal's control" as described in the Restatement (Third) of Agency.

### H.     Ratification

46.     In the alternative, Five Stars repeatedly ratified these telemarketing campaigns by knowingly accepting their benefits when Five Stars accepted business derived therefrom.

47.     Five Stars is aware, or should have been aware, that text messages were sent to individuals who had not provided written consent to receive telemarketing, and any reasonable person would have been aware of the illegal telemarketing alleged herein, under these circumstances.  Upon information and belief, Five Stars knew or should have known that texts were being sent using an "automatic telephone dialing system" to generate these leads, when Five Stars accepted business deriving from such texts.

### VI.     CLASS ACTION ALLEGATIONS

48.     Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

49.     Plaintiff brings this action individually and on behalf of all other persons similarly situated (hereinafter referred to as "the Class") pursuant to Federal Rule of Civil Procedure 23.

50. Plaintiff proposes the following Class definition, subject to amendment as appropriate:

> All persons within the United States, who were not Five Stars customers, who received a non-emergency text message on or after October 23, 2014, sent by or on behalf of Five Stars, advertising products or services.

51. Excluded from the Class are Five Stars, and any entities in which Five Stars has a controlling interest; Five Stars' agents and/or employees; any Judge to whom this action is assigned and any member of such Judge's staff and immediate family; claims for personal injury, wrongful death and/or emotional distress.

52. Plaintiff does not know the exact number of members in the Class, but Plaintiff reasonably believes Class members to number, at minimum, in the hundreds.

53. Plaintiff and all members of the Class have been harmed by the acts of the Five Stars, because their privacy has been violated, they were subject to annoying and harassing texts that constitute a nuisance, they temporarily lost legitimate use of their cell phones in having to deal with the texts, and they were charged for incoming texts.

54. This Class Action Complaint seeks injunctive relief and money damages.

55. The joinder of all Class members is impracticable due to the size and relatively modest value of each individual claim.

56. Additionally, the disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

57. Further, the Class can be identified through records maintained by Five Stars, its employees and/or agents, and/or the third party texting service.

58. There are well-defined, nearly identical, questions of law and fact affecting all parties.

59. The questions of law and fact, referred to above, involving the class claims predominate over questions that may affect individual Class members.

60. Such common questions of law and fact include, but are not limited to, the following:

1          a.      Whether Five Stars or the third-party texting services, if any, acting on behalf of Five Stars, used an automatic telephone dialing system in sending non-emergency text messages to Plaintiff and Class members;

         b.      Whether Five Stars can meet its burden of showing it obtained and possessed prior express written consent (*i.e.*, written consent that is clearly and unmistakably stated), to make such texts before such texts were made;

         c.      Whether Five Stars' conduct was knowing and/or willful;

         d.      Whether Five Stars is liable for statutory damages; and

         e.      Whether Five Stars should be enjoined from engaging in such conduct in the future.

61.     As persons who received non-emergency texts from an automatic telephone dialing system, without their prior express written consent within the meaning of the TCPA, Plaintiff asserts claims that are typical of each Class member who also received such texts.

62.     Further, Plaintiff will fairly and adequately represent and protect the interests of the Class.

63.     Plaintiff has no interests that are antagonistic to any member of the Class.

64.     Plaintiff has retained counsel experienced in handling class action claims involving violations of federal consumer protection statutes, including claims under the TCPA.

65.     A class action is the superior method for the fair and efficient adjudication of this controversy.

66.     Classwide relief is essential to compel Five Stars to comply with the TCPA.

67.     The interest of the Class members in individually pursuing claims against Five Stars is slight because the statutory damages for an individual action are relatively small, and are therefore not likely to deter Five Stars from engaging in the same behavior in the future.

68.     Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims because the texts at issue are all automated and the Class members, by definition, could not have provided the prior express written consent required under the statute to authorize such texts to their cellular telephones.

69. Five Stars has acted on grounds generally applicable to the Class, thereby making final injunctive relief and corresponding declaratory relief with respect to the Class as a whole appropriate.

70. Moreover, on information and belief, Plaintiff alleges that the TCPA violations complained of herein are substantially likely to continue in the future if an injunction is not entered.

**VII.  CAUSES OF ACTION**

### COUNT I

### STATUTORY VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT
### 47 U.S.C. §§ 227 *et seq.*

71. Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

72. The foregoing acts and omissions of Five Stars constitutes numerous and multiple violations of the TCPA, including but not limited to each of the above cited provisions of 47 U.S.C. §§ 227 *et seq.*

73. As a result of Five Stars' violations of 47 U.S.C. §§ 227 *et seq.*, Plaintiff and Class members are entitled to an award of $500 in statutory damages for each and every call in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

74. Plaintiff and Class members are also entitled to and do seek injunctive relief prohibiting Five Stars' violation of the TCPA in the future.

75. Plaintiff and Class members are also entitled to an award of attorneys' fees and costs.

### COUNT II

### KNOWING AND/OR WILLFUL VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT
### 47 U.S.C. §§ 227 *et seq*

76. Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein

77. The foregoing acts and omissions of Five Stars constitute numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to each of the above-cited provisions of 47 U.S.C. §§ 227 *et seq.*

78. As a result of the Five Stars' knowing and/or willful violations of 47 U.S.C. §§ 227 *et seq.*, Plaintiff and each member of the Class is entitled to treble damages of up to $1,500 for each and every call in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3).

79. Plaintiff and Class members are also entitled to and do seek injunctive relief prohibiting Five Stars' violation of the TCPA in the future.

80. Plaintiff and Class members are also entitled to an award of attorneys' fees and costs.

**VIII. RELIEF REQUESTED**

WHEREFORE, Plaintiff respectfully requests that the Court grant Plaintiff and all Class members the following relief against Five Stars:

1. Injunctive and declaratory relief prohibiting such violations of the TCPA by Five Stars in the future;

2. As a result of Five Stars' willful and/or knowing violations of 47 U.S.C. § 227(b)(1), Plaintiff seeks for herself and each Class member treble damages, as provided by statute, of up to $1,500 for each and every call that violated the TCPA;

3. As a result of Five Stars' statutory violations of 47 U.S.C. § 227(b)(1), Plaintiff seeks for herself and each Class member $500 in statutory damages for each and every text that violated the TCPA;

4. An award of reasonable attorneys' fees and costs to counsel for Plaintiff and the Class, to be paid from the common fund judgment;

5. An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing an appropriate Class and any Subclasses the Court deems appropriate, finding that Plaintiff is a proper representative of the Class, and appointing the lawyers and law firms representing Plaintiff as counsel for the Class; and

///

6.    Such other relief as the Court deems just and proper.

                                            Respectfully submitted,

                                            **KAPLAN FOX & KILSHEIMER LLP**

Dated:  October 23, 2018         By:  /s/ *Matthew B. George*
                                                      Matthew B. George

Laurence D. King
Matthew B. George
350 Sansome Street, Suite 400
San Francisco, CA 94104
Telephone:  415-772-4700
Facsimile:   415-772-4707
Email: *lking@kaplanfox.com*
       *mgeorge@kaplanfox.com*

**KAPLAN FOX & KILSHEIMER LLP**
Joel B. Strauss (to be admitted *pro hac vice*)
850 Third Avenue, 14th Floor
New York, NY 10022
Telephone: (212) 687-1980
Facsimile: (212) 687-7714
Email: *jstrauss@kaplanfox.com*

**MEYER WILSON CO., LPA**
Matthew R. Wilson
Michael J. Boyle, Jr.
1320 Dublin Road, Ste. 100
Columbus, Ohio 43215
Telephone:  (614) 224-6000
Facsimile:  (614) 224-6066
Email: *mwilson@meyerwilson.com*
       *mboyle@meyerwilson.com*

**DIMOND KAPLAN & ROTHSTEIN, P.A.**
Jeffrey Kaplan (to be admitted *pro hac vice*)
2665 S. Bayshore Drive, Penthouse 2B
Miami, FL 33133
Telephone: (305) 374-1920
Email: *jkaplan@dkrpa.com*

**LEVIN LAW, P.A**.
Brian Levin (to be admitted *pro hac vice*)
2665 South Bayshore Drive, Penthouse 2B
Miami, FL 33133
Telephone:  (305) 613-0318
Email: *Brian@levinlawpa.com*

***Counsel for Plaintiff and the Proposed Class***

- 13 -                       Case No. 18-cv-06468
CLASS ACTION COMPLAINT

## JURY DEMAND

Now come Plaintiff, by and through counsel, and hereby requests that the within matter be tried by a jury of the maximum number allowed by law.

Respectfully submitted,

**KAPLAN FOX & KILSHEIMER LLP**

Dated:  October 23, 2108          By:  /s/ *Matthew B. George*
                                            Matthew B. George

Laurence D. King
Matthew B. George
350 Sansome Street, Suite 400
San Francisco, CA 94104
Telephone:  415-772-4700
Facsimile:   415-772-4707
Email: *lking@kaplanfox.com*
            *mgeorge@kaplanfox.com*

**KAPLAN FOX & KILSHEIMER LLP**
Joel B. Strauss (to be admitted *pro hac vice*)
850 Third Avenue, 14th Floor
New York, NY 10022
Telephone: (212) 687-1980
Facsimile: (212) 687-7714
Email: *jstrauss@kaplanfox.com*

**MEYER WILSON CO., LPA**
Matthew R. Wilson
Michael J. Boyle, Jr.
1320 Dublin Road, Ste. 100
Columbus, Ohio 43215
Telephone:  (614) 224-6000
Facsimile:  (614) 224-6066
Email: *mwilson@meyerwilson.com*
            *mboyle@meyerwilson.com*

**DIMOND KAPLAN & ROTHSTEIN, P.A.**
Jeffrey Kaplan (to be admitted *pro hac vice*)
2665 S. Bayshore Drive, Penthouse 2B
Miami, FL 33133
Telephone: (305) 374-1920
Email: *jkaplan@dkrpa.com*

**LEVIN LAW, P.A**.
Brian Levin (to be admitted *pro hac vice*)
2665 South Bayshore Drive, Penthouse 2B
Miami, FL 33133
Telephone: (305) 613-0318
Email: *Brian@levinlawpa.com*

***Counsel for Plaintiff and the Proposed Class***